UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 08-188-GWU


MARY D. MOORE,                                                                    PLAINTIFF,


VS.                                **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity?
        If yes, the claimant is not disabled.  If no, proceed to Step 2.
        See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical
        or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
        claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
        impairment(s) significantly limiting the claimant's physical or
        mental ability to do basic work activities?  If yes, proceed to
        Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
        404.1520(c), 404.1521, 416.920(c), 461.921.

1

08-188  Mary D. Moore

4.      Can the claimant's severe impairment(s) be expected to result
        in death or last for a continuous period of at least 12 months?
        If yes, proceed to Step 5.  If no, the claimant is not disabled.
        See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of
        impairments meeting or equaling in severity an impairment
        listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
        Impairments)? If yes, the claimant is disabled.  If no, proceed
        to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a),
        416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity and the physical and mental
        demands of the work he has done in the past, still perform this
        kind of past relevant work?  If yes, the claimant was not
        disabled.  If no, proceed to Step 7.  See 20 C.F.R.
        404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity, age, education, and past work
        experience, do other work--i.e., any other substantial gainful
        activity which exists in the national economy?  If yes, the
        claimant is not disabled.   See 20 C.F.R. 404.1505(a),
        404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.   Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence.  Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

08-188  Mary D. Moore

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

3

08-188  Mary D. Moore

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

08-188  Mary D. Moore

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Mary D. Moore, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of obesity, degenerative disc and joint disease, a somatoform disorder, an anxiety disorder, and estimated borderline intellectual functioning.  (Tr. 18).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Moore retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 21-4).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE a series of hypothetical questions.  Ultimately, the hypothetical factors upon which the ALJ rested his decision included a limitation to "light" level exertion, along with the following non-exertional limitations.  They specify that the plaintiff: (1) was unable to squat; (2) could occasionally climb, stoop, bend at the waist, crouch, and crawl; (3) could

7

08-188  Mary D. Moore

perform occasional reaching and gross manipulation; (4) could have no exposure to vibrating machinery, dust, fumes, smoke, chemicals or noxious gases; and (5) had a limited but satisfactory ability to maintain attention and concentration and to understand, remember, and carry out simple instructions.  (Tr. 500-1).  The VE responded that there would be a "very limited number of occupations" available, and proceeded to list the positions of inspector with 300 positions in "the region"[1] and 17,000 nationally, and machine tender with 250 regional positions and 34,000 nationally.  (Tr. 502).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.  After a review of the evidence, the court concludes that a remand will be required for further consideration of the plaintiff's mental restrictions.

At issue in consideration of both the plaintiff's mental and physical impairments are the provisions of 20 C.F.R. § 416.927 (2008), the regulation describing the manner in which the defendant evaluates opinion evidence.  Section 416.927(f)(2) states that ALJs are not bound by findings made by state agency medical or psychiatrical consultants, but because these consultants are highly qualified experts, their findings must be considered as opinion evidence.  This

---

[1]"The region" was undefined.

8

08-188  Mary D. Moore

section provides that "[u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given" to the consultant's opinion.

The plaintiff alleged disability due to a "cracked disc" in her lower back, breathing problems, swelling over her entire body, osteoarthritis, nerves, anxiety attacks, and depression, with an alleged onset date of May 15, 2003.  (Tr. 65-6). There is a large volume of medical evidence concerning treatment for a variety of conditions.  The records include a stress test in July, 2004, prior to a total abdominal hysterectomy (Tr. 139, 311) showing areas of reversible and non-reversible defects and an ejection fraction calculated at only 32 percent, but a cardiac catheterization was normal and it was recommended that she be evaluated for non-cardiac causes of chest pain (Tr. 134-6).  Complaints of abdominal pain later in the year resulted in the discovery of a small hiatal hernia and positive H. pylori, which was treated with medication.  (Tr. 211, 215, 310).  A pulmonary function test in June, 2005 showed only very mild non-obstructive pulmonary disease.  (Tr. 167).  From a musculoskeletal standpoint, an MRI of the lumbrosacral spine in June, 2002 produced a finding of degenerative disc disease at L5-S1 with a moderate central disc protrusion or herniation.  (Tr. 315).  A left knee x-ray in December, 2003 showed minimal degenerative changes.  (Tr. 180).  The plaintiff's treating family physician, Dr. Jose Echeverria, assessed no surgical condition due to the L5-S1

9

disc problem, and prescribed the medications Lortab and Naprosen, but his physical findings showed only back tenderness with no sensory, reflex, or other deficits, including weakness.  (Tr. 207-8).  He also prescribed a diuretic for complaints of swelling.  (Id.).  No functional restrictions are given.

Dr. Kip Beard, who conducted a consultative examination on June 15, 2005, was the only examining source to list restrictions.  He found that the plaintiff weighed 250 pounds at a height of 5 feet 2 inches, and although she was using a cane she was able to ambulate without it, albeit with a slow-paced, uncomfortable-appearing gait.  (Tr. 162-3).  She had a mild degree of difficulty arising from the seated position and getting up and down from the examination table.  She appeared comfortable while seated but mildly uncomfortable lying down.  There was no abdominal tenderness and her lungs were clear with the breath sounds diminished in the bases.  (Id.).  There was some pain on arm motion testing with mild tenderness and crepitations, as well as some crepitation in the knees, which had somewhat limited flexion. (Tr. 164).  He noted no swelling or other problems.  Some pain was present on range of motion testing of the lumbrosacral spine, but Mrs. Moore was able to stand on one leg at a time without difficulty, and able to walk on her heels and toes and squat two-thirds of the way down with knee pain.  (Tr. 164-5).  Dr. Beard opined that Mrs. Moore would be limited in her ability to bend repetitively at the waist, perform heavy lifting or carrying, and repetitively reach or

08-188  Mary D. Moore

use her arms overhead.  He noted possible limitations with prolonged sitting or standing and repetitive squatting.  (Tr. 165-6).

Dr. R. K. Brown, a state agency reviewing physician, reviewed the evidence on July 21, 2005 and opined that the plaintiff's allegations were partially credible. (Tr. 464).  He gave Dr. Beard's examination findings great weight, and completed a functional capacity assessment limiting Mrs. Moore to "light" level exertion with the ability to stand and walk or sit about six hours in an eight-hour work day, "never" climbing ladders, ropes, and scaffolds, "occasionally" climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling, and no more than frequently reaching in all directions including overhead and performing gross manipulation. He opined that she should avoid even moderate exposure to extreme cold and heat and should avoid concentrated exposure to pulmonary irritants, vibration, and hazards such as machinery and heights.  (Tr. 460-6).  Another state agency source, Dr. Timothy Gregg, subsequently agreed with Dr. Brown's assessment.  (Tr. 450-6).

The restriction on balancing, not accepted by the ALJ, is of potential vocational significance. Social Security Ruling (SSR) 85-15, p. 6; see also SSR 83-14, p. 2. The ALJ noted the state agency opinions but modified the postural limitations, citing the weight of the evidence and the plaintiff's presentation at the hearing.  (Tr. 22-3).  The ALJ had earlier noted that Dr. Echeverria, the treating physician, did not mention gait problems, and that the plaintiff had chosen to use

a cane herself and no physician had noted neurological or strength deficits.  (Tr. 22).  Taken as a whole, the ALJ's rationale for modifying the postural restrictions given by the state agency sources is adequate, particularly in view of the fact that the examiner, Dr. Beard, did not specifically cite balancing as a limitation.

Turning to the mental restrictions, the plaintiff was evaluated on two occasions by Psychologist Phil Pack, who reviewed some records mentioning anxiety by Dr. Echeverria.  (Tr. 154-5).  Mr. Pack noted on both occasions that the plaintiff ambulated in a "dramatic exaggerating fashion" using a cane.  (Tr. 155, 191).  On the first occasion he felt that in addition the plaintiff appeared to be over-sedated, although this was not the case on the second examination.  (Id.).  Mrs. Moore reported that she had attended school until the seventh grade in regular classes, and had only gone for mental health treatment on one occasion several years earlier without following up.  (Tr. 155).  At the first examination she reported that, while her husband had to perform household chores, including shopping, she kept up with money, mail, and bills, and managed the family bank account.  (Tr. 156).  On the second occasion, she indicated that she and her husband performed these tasks together.  (Tr. 193).  She reported few social activities although she visited her mother twice a day.  (Tr. 156, 193).  Mr. Pack administered IQ testing, which produced very low scores between 52 and 60, but indicated that they were not valid.  (Tr. 157, 194).  She could read at the eighth grade level at the first

examination, but only at the sixth grade level at the second.  (Tr. 158, 194).  The Rey 15-Item Test indicated less than optimal effort both times.  (Id.).  Mr. Pack's diagnoses were provisional, including a pain disorder, over-sedation, a somatoform disorder, and borderline intellectual functioning.  On both occasions he recommended a comprehensive review of records to verify her complaints.  (Tr. 159, 195).  At the first examination, he stated that, in terms of functional restrictions, he was unable to determine Mrs. Moore's ability to understand, retain, and follow instructions and she had a "fair to poor" ability to adapt to the stress and pressures of day-to-day work activity and a "poor" ability to sustain attention to perform repetitive tasks, based on the history she had provided.  (Tr. 159).  Her ability to relate to others, including fellow workers and supervisors, was fair.  After the second examination, he stated that her ability to sustain attention to perform repetitive tasks "would seem to be poor given her levels of distractibility and pain complaints."  Otherwise his evaluation was essentially the same.

Dr. Stephen Scher, a state agency psychologist, reviewed the evidence on January 6, 2006.  He agreed that there were concerns that the plaintiff was not giving full effort, and noted that Mrs. Moore's IQ scores were inconsistent with her ability to manage a checkbook and pay bills.  (Tr. 447).  He could not find confirmation that she had recently started the anti-depressant Lexapro and there were no details regarding her anxiety and depression in Dr. Echeverria's notes.

08-188  Mary D. Moore

(Id.).  Dr. Scher stated that he gave Mr. Pack's opinion "great weight" as reflecting severe limitations that are not totally disabling.  (Id.).  He completed a mental residual functional capacity assessment stating that the plaintiff would have a moderately limited ability to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal work day and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting.  (Tr. 445-6).

Although the ALJ noted that the state agency psychologist had found moderate limitations in social functions and in maintaining concentration, persistence, and pace (Tr. 21), these findings were not reflected in his hypothetical question, in any detail.  The specific limitations given by the state agency reviewer are potentially more limiting than the restrictions on attention and concentration and simple instructions in the hypothetical question, particularly given the very restricted job categories and job numbers cited by the VE.  Moreover, if the specific restrictions given by Dr. Scher were not to be accepted, no rationale has been given under § 416.927 for failing to accept them.  While the court recognizes that Mr.

14

08-188  Mary D. Moore

Pack found that the plaintiff was not giving her best effort during examination, Mr. Pack advised a complete review of the plaintiff's medical records in order to determine her true condition.  Dr. Scher is the only psychological professional to have done so and if his limitations are not accepted by the defendant, the regulations provide that a rationale be given for doing so.[2]

The decision will be remanded for further consideration.

This the 15th day of April, 2009.

Signed By:

G. Wix Unthank

United States Senior Judge

---

[2]Although the plaintiff has not raised the issue, the VE's testimony appears to be of questionable usefulness in carrying the Commissioner's burden of showing that there are a significant number of jobs existing in the economy which can be performed by the plaintiff.  The total of 550 jobs in an unspecified region is not helpful, and a total of only 41,000 jobs nationally is a very low number.